UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN H. VILLAREAL, LORENA VILLAREAL,<br><br>Plaintiffs,<br><br>v.<br><br>SENECA MORTGAGE SERVICES; AMS SERVICING, LLC; and DOES 1 – 20, inclusive,<br><br>Defendants. | 1:14-cv-02033-MCE-GSA<br><br>**FINDINGS AND RECOMMENDATION RE: DEFENDANT'S MOTION TO DISMISS**<br><br>(ECF No. 5) |

I.  **INTRODUCTION**

On December 19, 2014, Defendant Seneca Mortgage Services ("Defendant") removed this case from Tulare County Superior Court.[1] One month later, on January 13, 2015, Defendant filed a Motion to Dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). The motion was referred to Magistrate Judge Gary S. Austin. (ECF Nos. 5, 8.) Plaintiffs filed an untimely opposition brief to the Motion on March 16, 2015.[2] (ECF No. 13.) Defendant objected to the untimely submission of the opposition and asked that it be stricken. (ECF No. 14.) Rather than

---

[1] Seneca Mortgage Services was previously known as AMS Servicing, LLC. Both are named as defendants in this case, although they appear to be the same entity.

[2] The docket reflects that mail addressed to Plaintiffs has been returned as undeliverable. However, Plaintiffs appear to have been receiving notice of orders in this case and have even contacted chambers to inquire about the case. Plaintiffs are instructed to update their mailing address with the Court in accordance with Local Rule 183.

1

sustain Defendant's objection, the Court elected to provide Defendant an opportunity to submit a reply brief for the Court's consideration. Plaintiff filed a reply on April 8, 2015. (ECF No. 17.) The Court has reviewed the papers and determined that this matter is suitable for decision without oral argument pursuant to Local Rule 230(g). Upon a review of the pleadings, the Court recommends that Defendant's Motion be GRANTED and the Complaint be DISMISSED WITHOUT LEAVE TO AMEND.

## II.  BACKGROUND

This case arises out of the default by Plaintiffs Juan and Lorena Villareal ("Plaintiffs") on a home loan. On May 17, 2008, Plaintiffs obtained a loan in the amount of $162,450 from Countrywide Bank, FSB.[3] The loan was secured by a piece of property located at 926 East Tulare Avenue, Earlimart, California 93219.[4] By February 2010, Plaintiffs began having difficulty making the payments on the loan and a notice of default was issued.[5] Over the next four years, the deed of trust was assigned to various successive parties and numerous notices of default were issued and then rescinded. The most recent Notice of Default and Election to Sell was recorded on May 29, 2014 at the request of trustee Carrington Foreclosure Services, LLC and indicates arrearages of $68,879.40. Defendant is the servicing agent for Carrington and is listed on the notice as the point of contact for Plaintiffs. U.S. Bank, N.A., is the current beneficiary.

---

[3] Defendant requests the Court take judicial notice of the following documents maintained in the Official Records of Tulare County, the U.S. Bankruptcy Court, Eastern District of California, and online by the Department of the Treasury: Deed of Trust; Loan Modification Agreement; Notice of Default, dated February 3, 2010; Substitution of Trustee and Assignment of Deed of Trust; Notice of Rescission of Declaration of Default and Demand for Sale; Notice of Default, dated April 23, 2012; Corporation Assignment of Deed of Trust; a second Corporation Assignment of Deed of Trust; Substitution of Trustee; Notice of Default, dated February 14, 2014; Notice of Rescission of Notice of Default; Notice of Default, dated May 29, 2014; Notice of Trustee's Sale; Docket for bankruptcy case no. 14-14786; Order of Dismissal in bankruptcy case no. 14-14786; Docket for bankruptcy case no. 14-15322; Order of Dismissal in bankruptcy case no. 14-15322; Docket for bankruptcy case no. 14-15773; Office of Thrift Supervision opinion letter, dated July 22, 2003. (Request for Judicial Notice in Support of Defendant's Motion to Dismiss Plaintiffs' Complaint, Exhs. 1 - 20, ECF No. 5-1.) Courts may take judicial notice of facts "not subject to reasonable dispute" because they are either: "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Plaintiffs do not argue that the request for judicial notice should be denied. All the documents attached by Defendant are public records or court documents and the Court takes judicial notice of them. *U.S. v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011) (courts may "take judicial notice of 'matters of public record'" and consider them when ruling on a Rule 12(b)(6) motion).

[4] The address on the deed of trust was later modified to reflect the address as 926 East Tulare *Street*.

[5] Plaintiffs allege in the Complaint that they found it difficult to make payments on the loan in March 2012; however, the Notice of Default, dated February 3, 2010, indicates that their difficulties arose at least two years before then.

1      Beginning in 2012, Plaintiffs contacted Defendant on several occasions to arrange a loan
2 modification. Plaintiffs engaged in several attempts to submit an application for a loan
3 modification, but each application was rejected on the basis that Plaintiffs had not attached the
4 required documents. The last such application was submitted in May 2013. Plaintiffs were
5 informed by Defendant that documents were missing from that application at some point in 2014.
6 The next communication Plaintiffs received from Defendant was the most current Notice of
7 Default dated May 29, 2014. Later in 2014, Plaintiffs made at least three attempts to file for
8 bankruptcy. At least two of their bankruptcy petitions were rejected, however, after they failed to
9 file the required documents in a timely manner.[6]

     Plaintiffs' Complaint alleges four causes of action:

1. A violation of California Civil Code § 2924.18, which precludes "dual tracking," or the practice of beginning foreclosure proceedings while simultaneously negotiating a loan modification with the borrower;

2. A violation of California Civil Code §§ 2923.55 and 2923.6, which similarly regulate the conduct of mortgage servicers (among others) while a loan modification application is pending;

3. Intentional misrepresentation, based on phone conversations Plaintiff had with employees of Defendant, in which Defendant allegedly told Plaintiffs that their loan modification application(s) would be reviewed; and,

4. Negligent misrepresentation, based on the same alleged misrepresentations.

**III.    LEGAL STANDARDS FOR A MOTION TO DISMISS**

To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must "accept all factual

---

[6] The third petition was pending at the time of this Motion.

3

allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899-900 (9th Cir. 2007). Legally conclusory statements, not supported by actual factual allegations, need not be accepted. *Ashcroft*, 556 U.S. at 678-79. A court may, however, consider documents other than the complaint when they are judicially noticeable under Federal Rule of Evidence 201 or where "no party questions their authenticity and the complaint relies on those documents." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).

## IV. DISCUSSION

Defendant moves to dismiss the Complaint on the grounds that: (1) Plaintiffs' state causes of action are preempted by the federal Home Owner's Loan Act ("HOLA"); and (2) Plaintiffs' causes of action are inconsistent with or unsupported by the factual allegations in the Complaint, precluding relief. Plaintiffs' opposition brief addresses the preemption issue, but does not respond to Defendant's other arguments.

### A. HOLA preemption

#### i. HOLA's history.

Although states traditionally enjoy wide discretion to regulate activity within their borders, federal laws may preempt state laws "when [a] State regulates in an area where there has been a history of significant federal presence." *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1004 (9th Cir. 2008), *quoting United States v. Locke*, 529 U.S. 89, 108 (2000). Federal regulations have the same preemptive effect as federal laws, so long as the enacting agency was acting within its statutory mandate in enacting the regulation. *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153-54 (1982).

HOLA was created in 1933, "at a time when record numbers of home loans were in default and a staggering number of state-chartered savings associations were insolvent." *Id.* It was "designed to restore public confidence by creating a nationwide system of federal savings and loan associations to be centrally regulated according to nationwide 'best practices.'" *Id.*

Through HOLA, Congress granted the Office of Thrift Supervision ("OTS") "broad

4

authority to issue regulations governing thrifts."[7] *Silvas*, 514 F.3d at 1005, *citing* 12 U.S.C. § 1464. Using this authority, OTS created regulations detailing the extent of its authority:

> OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section....

12 C.F.R. § 560.2(a). Construing these regulations, courts have held that there is a "history of significant federal presence in national banking" and that HOLA (and its implementing regulations) can preempt a variety of state laws. *Silvas*, 514 F.3d at 1005, *citing Bank of America v. City and Cnty. of San Francisco*, 309 F.3d 551, 559 (9th Cir. 2002).

### ii. Current law governing HOLA preemption.

HOLA regulations, however, only expressly occupy "the entire field of lending for ***federal savings associations***." 12 C.F.R. § 560.2(a) (emphasis added). Thus, while federal savings banks (such as Countrywide Bank, FSB) are subject to HOLA, national banks (and other lenders) are not. *Marquez v. Wells Fargo Bank, N.A.*, No. C 13-2819 PJH, 2013 WL 5141689, at *3 (N.D. Cal. Sept. 13, 2013). Defendant is not a federal savings bank. Nevertheless, Defendant argues that HOLA should still preempt state laws that purport to regulate its conduct here because "the status of the ***originator of the loan*** determines the applicability of HOLA to a particular loan," rather than the status of the current ***holder/servicer of the loan***. (Motion 5:20-22, ECF No. 5.) (emphasis added). Because the loan at issue originated from Countrywide Bank, a federal savings bank, Defendant argues that HOLA should continue to apply.

Several federal district courts have agreed with Defendant's interpretation of HOLA. *See, e.g., Metzger v. Wells Fargo Bank, N.A.*, No. LA CV14-00526 JAK, 2014 WL 1689278, (C.D. Cal. April 28, 2014); *Marquez*, 2013 WL at *4; *Hayes v. Wells Fargo Bank, N.A.*, No. 3:13-cv-

---

[7] Under the Dodd-Frank Wall Street Reform and Consumer Protection Act, OTS was consolidated with the Office of the Comptroller of Currency ("OCC"). OCC has since created new regulations superseding OTS's regulations as of August 9, 2011. *Davis v. World Savings Bank, FSB*, 806 F.Supp.2d 159, 166 fn. 5 (D.D.C. 2011). Because the newly created regulations are not retroactive, however, and the deed of trust in this case was executed on May 21, 2008, the OTS regulations are applicable here. *Id.*; Request for Judicial Notice Exh. 1, ECF No. 5-1.

0420 KAW, 2013 WL 4117050 (N.D. Cal. Aug. 12, 2013). These courts have argued, among other things, that part of HOLA's intent was to preserve the ability of federal savings organizations "to sell mortgages that they originate under a uniform federal system." *Metzger*, 2014 WL 1689278, at *4, *quoting* OTS Opinion Letter, P-2003-5 (July 23, 2003).[8] The application of state law to a mortgage could decrease the marketability of the mortgage by subjecting the debt obligation to different legal requirements if it were sold to a non-federal savings bank buyer. *de la Cuesta*, 458 U.S. at 155 fn. 10 ("The marketability of a mortgage in the secondary market is critical to a savings and loan, for it thereby can sell mortgages to obtain funds to make additional home loans"). Moreover, the applicable regulations suggest a "general principle that loan terms should not change simply because an originator entitled to federal preemption may sell or assign a loan to an investor that is not entitled to federal preemption." *Id.* Finally, courts supporting HOLA preemption have looked at the terms of the respective loan agreements to determine whether parties agreed to be governed by federal law.

Other district courts, however, have disagreed with Defendant's position, arguing that either: (1) HOLA preemption should never apply to successors of federal savings associations; or (2) HOLA preemption should apply to successors of federal savings associations, but only when the claims arise out of conduct that occurred before the loan was transferred away from the federal savings association.[9] *See, e.g., Rijhwani v. Wells Fargo Home Mortg., Inc.*, No. C 13-05881 LB, 2014 WL 890016 (N.D. Cal. March 3, 2014); *Hopkins v. Wells Fargo Bank, N.A.*, No. CIV 2:13-00444 WBS JFM, 2013 WL 2253837 (E.D. Cal. May 22, 2013); *Albizo v. Wachovia Mortg.*, No. 2:11-cv-02991 KJN, 2012 WL 1413996 (E.D. Cal. April 20, 2012). The second approach is considerably more popular among these courts than the first. In *Stolz v. OneWest Bank*, No. 03:11-cv-00762-HU, 2012 WL 135424 (D. Or. Jan. 13, 2012), for instance, a court found the nature of the original lender "inconsequential" in deciding whether HOLA preemption applied; rather, it was only nature of the servicer **at the time of the challenged acts** that decided

---

[8] A copy of the cited opinion letter was submitted by Defendant as Exh. 20 to the Request for Judicial Notice (ECF No. 5-1.)

[9] Plaintiffs assert that "[e]very court to analyze the split in the case law has . . . distinguished between pre-merger FSB conduct and post-merger national bank conduct." (Opposition 10:1-3, ECF No. 13.) This does not appear to be the case.

whether HOLA preemption applied.

At least two of the decisions supporting Plaintiffs' position, *Hopkins* and *Albizo*, were based on failures by the respective defendants to assert a legal basis for HOLA preemption. *Hopkins*, 2013 WL 2253837, at *3 ("Defendant does no more than provide a one-sentence explanation stating that . . . it is treated as a federal savings bank for purposes of HOLA preemption"); *Albizo*, 2012 WL 1413996, at *16 ("Given defendants' one-sentence 'argument' for why defendants are in the position to assert HOLA preemption . . . defendants have not sufficiently shown that they may assert HOLA preemption in this case"). Other cases concluding that HOLA preemption does not apply have similarly argued that the cases supporting HOLA preemption have done so without "analyzing its applicability . . . or simply noting that a plaintiff does not challenge the issue." *Valtierra v. Wells Fargo Bank, N.A.*, No. CIV-F-10-0849 AWI GSA, 2011 WL 590596, at *3 (E.D. Cal. Feb. 10, 2011).

### iii.  *HOLA's applicability in the current case.*

In this instance, Plaintiffs have offered little legal basis *not* to apply HOLA preemption. While the Opposition includes various criticisms of cases (many of which are not cited by Defendant), it does not engage with Defendant's legal arguments.[10] Most critically, it does not rebut the argument that a borrower's claims against "purchasers or assignees of loans originated by federal savings associations" are just as limited as they are against a federal savings association. OTS Opinion Letter 7, P-2003-5 (July 23, 2003) ("where the original creditor is a federal savings association, the borrower's ability to assert claims and defense against that type of creditor is limited by federal preemption. Thus, the NJ Act would appear to make the borrower's ability to assert claims and defenses against purchasers and assignees similarly limited").

While it may be counterintuitive for the protection of HOLA preemption to travel with the loan, rather than the lender, such administrative agency opinion letters are "entitled to respect . . . to the extent that those interpretations have the 'power to persuade.'" *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000); *Christopher v. SmithKline Beecham Corp.*, 635 F.3d 383, 392 (9th Cir.

---

[10] Plaintiffs' Opposition appears to be copied verbatim from a reply amicus curiae brief submitted in the case *Winterbower v. Wells Fargo Bank, N.A.*, No. SA CV 13-0360-DOC-MLGx, 2013 WL 1232997 (C.D. Cal. March 27, 2013). The case appears to have been voluntarily dismissed while a motion for summary judgment was pending.

7

2011). This interpretation squares with the legislative purpose of HOLA—if the intent is to ensure that home loans are marketable in a uniform system, it would make little sense to allow each state to hamper the servicing of those loans as they see fit. The Court finds OTS's conclusions with respect to the purpose and intent of HOLA persuasive. Thus, HOLA preemption applies here.

Particular state laws are preempted by HOLA if they impact "[t]he terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be due and payable," or impose requirements on the "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages . . . " 12 C.F.R. § 560.2(b)(4), (10). If a state law does not fall within the list of proscribed areas, the court must determine whether the law "affects lending." *Marquez*, 2013 WL 5141689 at *4, *citing Silvas*, 514 F.3d at 1005. If the law does affect lending, it is presumptively preempted.

**B.  First Cause of Action: Violation of California Civil Code § 2924.18**

Plaintiffs' first cause of action alleges that Defendant "failed and refused to follow the requirements of" § 2924.18, which prohibits a mortgage servicer from recording a notice of default while a borrower's first complete loan modification application is pending. Plaintiffs allege that Defendant violated this section by filing a Notice of Default, although they do not clearly allege that they submitted a complete application for a loan modification. In any case, "'claims arising under California Civil Code section 2924 are preempted by HOLA' because such claims concern the 'processing' and 'servicing' of mortgages." *Metzger*, 2014 WL 1689278 at *5, *citing Sami v. Wells Fargo Bank, N.A.*, No. C 12-00108 DMR, 2012 WL 967051, at *8 (N.D. Cal. March 21, 2012). This statute is thus preempted and no cause of action can arise.

Even were it not preempted, Plaintiffs have not pleaded the facts necessary to state a claim. Section 2924.18 expressly requires borrowers to submit a "complete application" for its protections to apply. At no point in the Complaint do Plaintiffs allege that they submitted a complete application for a loan modification. In fact, in the final communication Plaintiffs had with Defendant, Defendant informed them that documents were missing from their application

and that their application was not final. (Complaint ¶ 23, ECF No. 1.) Notably, Defendant raised this argument in their initial moving papers, but Plaintiffs declined to respond in their opposition. Were this the only deficit in this cause of action, leave to amend might be appropriate so that Plaintiffs could further allege details regarding the applications they filed with Defendant. Given the federal preemption of the statute, however, leave to amend is not appropriate.

### C. Second Cause of Action: Violations of California Civil Code §§ 2923.55 / 2923.6

The second cause of action alleges violations of §§ 2923.55 and 2923.6. Rather than explaining how each statute has been violated, however, Plaintiffs merely recite the entire text of each statute and conclude that Defendant has "failed and refused to follow the requirements of these statutes." (Complaint ¶ 31.) Section 2923.55, broadly speaking, lays out requirements that mortgage services must meet before they serve a notice of default on a borrower. They must, among other things, "contact the borrower in person or by telephone to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Cal. Civ. Code § 2923.55(b)(2). The statute also explains, in great detail, the specific notice provisions before a notice of default is recorded. Section 2923.6 mirrors section 2924.18, except that the latter is only applicable to "Smaller Residential Mortgage Lenders." Cal. Civ. Code § 2924.18(b).

Each of the sections alleged in the second cause of action are preempted by HOLA, in any case. *Marquez*, 2013 WL 5141689 at \*5 ("Claims for violation of Civil Code § 2923.5 (the predecessor of § 2923.55) are preempted by HOLA because they fall 'squarely within the scope of HOLA's Section 560.2(b)(10)'"); *Metzger*, 2014 WL 1689278 at \*6 ("Claims for violations of § 2923.6 are preempted by HOLA because they implicate the 'processing' and 'servicing' of mortgages").

As with the first cause of action, there are other grounds aside from federal preemption warranting the dismissal of this claim. Specifically, the allegations in the Complaint appear to concede that Defendant complied with the basic requirements of § 2923.55—Plaintiffs allege that Defendant spoke with them on multiple occasions by telephone to discuss options to avoid foreclosure. The Complaint is devoid of any specific description explaining which requirements

of § 2923.55 Defendant failed to comply with and the mere recitation of the statute does not make a claim on that basis plausible. The same arguments that applied to § 2924.18, above, will also apply to § 2923.6:  Even construing the Complaint in favor of Plaintiffs, Plaintiffs do not appear to have ever submitted a complete loan modification application to Defendant. As with the first cause of action, Defendants raised these arguments in their moving papers but Plaintiffs declined to respond to them in any fashion. These claims must thus be dismissed without leave to amend.

### D.  Third Cause of Action: Intentional Misrepresentation

The third cause of action alleges that Defendant made fraudulent misrepresentations about their willingness to process Plaintiffs' loan modification application. Because Plaintiffs are attempting to "apply a state law of general applicability to require Defendant to take particular affirmative actions in servicing a mortgage," the law is preempted by HOLA. *Metzger*, 2014 WL 1689278 at *7. Aside from preemption, other grounds preclude this claim from proceeding.

A claim for intentional misrepresentation requires "(1) a misrepresentation; (2) knowledge of falsity; (3) intent to induce reliance; (4) actual and justifiable reliance; and (5) resulting damage." *Chapman v. Skype Inc.*, 220 Cal.App.4th 217, 230-31 (2013) ("Each element of a fraud count must be pleaded with particularity so as to apprise the defendant of the specific grounds for the charge and enable the court to determine whether there is any basis for the cause of action"). Plaintiffs identify the following as fraudulent misrepresentations by Defendant:

- Defendant was "willing to negotiate with Plaintiffs to modify the loan on their property" (Complaint ¶ 35);
- Defendant represented that it was "in good faith negotiations with Plaintiffs, and that it was possible for them to obtain a loan modification through them if their application was approved" (Complaint ¶ 35);
- Defendant stated that "they was [sic] actively working on their application for a loan modification [and] their application was going to be reviewed." (Complaint ¶ 36.)

California law establishes that a fraudulent misrepresentation requires more than a simple statement that a defendant is willing to negotiate or entertain a loan application, however. *Conrad*

*v. Bank of America*, 45 Cal.App.4th 133, 156 (1996) ("a willingness to consider future loan applications . . . does not establish a fraudulent promise to make a loan"). Each of these three statements implies no more than that: none of the three statements promises that Plaintiffs will receive a loan modification or that their application will be approved. Rather, they express a willingness to discuss the loan modification process with Plaintiffs and review any applications Plaintiffs submit.

Nor do Plaintiffs plead actual and justifiable reliance on the alleged misrepresentations. Plaintiffs plead only that they "acted in justifiable reliance upon the promises," but do not describe any of their actions with the requisite specificity. (Complaint ¶ 37.) The Complaint alleges that Plaintiffs were unable to make payments on the loan beginning in March 2012. Documents that the Court has judicially noticed indicate that this inability actually began as early as February 2010. The alleged fraudulent statements were made between August 2012 and March 2014. But nothing in Plaintiffs' behavior appears to have changed as a result of the statements—both before and after the alleged misrepresentations, Plaintiffs were not making payments on the loan. It is thus unclear what they did or did not do as a result of Defendant's statements. Without such an explanation, there can be no claim of fraud. *Ortiz v. America's Serv. Co.*, No. EDCV 12-191 CAS (SPx), 2012 WL 2160953, at *5 (June 11, 2012) (holding that a plaintiff did not show reasonable reliance where she was simply unable "to satisfy her mortgage obligations").

Plaintiffs have again neglected to discuss Defendant's arguments with respect to this cause of action in their opposition brief. It must be dismissed without leave to amend.

**E. Fourth Cause of Action: Negligent Misrepresentation**

Plaintiffs' fourth cause of action relies on the same facts and alleged statements as the third cause of action. The elements of negligent misrepresentation are the same as those for intentional misrepresentation, "except that it does not require knowledge of falsity, but instead requires a misrepresentation of fact by a person who has no reasonable grounds for believing it to be true." *Chapman v. Skype Inc.*, 220 Cal.App.4th 217, 231 (2013). Consequently, the fourth cause of action fails for the same reasons as the third cause of action.

In addition, "negligent misrepresentation rests upon the existence of a legal duty, imposed

11

by contract, statute or otherwise, owed by a defendant to the injured person." *Eddy v. Sharp*, 199 Cal.App.3d 858, 864 (1988). And, "as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal.App.3d 1089, 1096 (1991). Thus, to survive a motion to dismiss, Plaintiffs "must plead facts indicating that defendant went beyond the typical role of a money lender to plead a negligent misrepresentation claim." *Settle v. World Sav. Bank, FSB*, No. ED CV 11-00800 MMM (DTBx), 2012 WL 1026103, at *9 (Jan. 11, 2012). Plaintiffs have not done so here and thus cannot state a claim for negligent misrepresentation.

### V.   RECOMMENDATION

For the reasons set forth above, the Court finds that the Complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6). Accordingly, it is recommended that the Motion to Dismiss be GRANTED and that the Complaint be DISMISSED WITHOUT LEAVE TO AMEND.

These findings and recommendations will be submitted to the district judge assigned to this case pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within thirty (30) days after being served with these Findings and Recommendations, Plaintiffs may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **May 16, 2015**                                /s/ Gary S. Austin
                                                        UNITED STATES MAGISTRATE JUDGE